

**JAMES T. SIMONITSCH**
INDEPENDENT MARINE SURVEYOR

P.O. BOX 192, ROUND POND, ME 04564
TEL: 207-529-6885 • FAX: 207-529-6887

December 3, 2004

Mr. Kenneth M. Chiarello
Clinton and Muzyka, PC
1 Washington Mall, Suite 1400
Boston, MA 02108

RECEIVED
DEC 0 8 2004
CLINTON & MUZYKA, P.C.

Mr. Timothy Duffy
Mason & Duffy, PC
72 Sharp Street
Hingham, MA 02043

Re: OneBeacon American Insurance Company vs. Blue Water Enterprises Inc. vs.
Civil action number: 04-11753-JLT

Dear Mr. Chiarello and Mr. Duffy:

By way of compliance with the courts appointment of the undersigned as umpire in reference to the lack of agreement between the parties' surveyors, I performed a Damage Survey on the F/V "Prim Lady", a 1995 42' Provincial lobster boat, Massachusetts registration #MS2682BW, Massachusetts assigned hull number "MSZ MT 181 G202", on November 23, 2004. **ENCLOSURE #1, PHOTOS 1, 2, 3.**

At the time of the survey the boat was hauled up and set aside at Green Harbor Marina, Brant Rock, Massachusetts. The boat was supported by three keel blocks, four port and starboard screw stands, and a single stem stand.

Present at the time of the survey, in addition to the undersigned, were:
 1. Mr. Joseph Galgana, on behalf of the owner's, Blue Water Enterprises, Inc.

Mr. Chiarello & Mr. Duffy
December 3, 2004
Page 2

    2. Mr. David Wiggin, marine surveyor on behalf of OneBeacon American Insurance Company.

Absent from the survey was Mr. Rob Scanlan, marine surveyor. Mr. Scanlan contacted the undersigned by telephone on Wednesday, November 24, 2004 in order to explain his absence from survey. Mr. Scanlan stated that he had received insufficient advance notice of the time and date of the survey in order to plan his attendance.

In preparation for the survey the undersigned reviewed the documents and photographs provided by Mr. Wiggins, per his letter of November 12, 2004, **ENCLOSURE #2**. I also reviewed the documents provided by Mr. Scanlan, which included:
    1. Two page sales/data sheet from Provincial Boat and Marine Limited.
    2. One page typical lay out of deck support structure and tank placement.
    3. Report of survey #02.10.6

No photographs were provided by Mr. Scanlan. Mr. Galgana reported that Mr. Scanlan had taken photographs at the time of his survey.

Mr. Galgana also reported to me:
    1. The boat had previously been in service in the lobster fishery.
    2. The boat was purchased from the seller and the seller allowed to continue using the boat in order to complete the lobster season. The seller added approximately 400 to 500 hours of operation post purchase and sale.
    3. The boat was surveyed for the owners by East Bay Surveyors of Warren, Rhode Island. Mr. Robert Clark was the surveyor.
    4. No engine survey was performed on behalf of the owners prior to the purchase of the boat.

It is my understanding that the F/V "Prim Lady" was involved in a collision at sea, while on anchor. It is also reported in Mr. Galgana's statement, **ENCLOSURE #3**, that the boat "Snow Goose" struck the F/V "Prim Lady" in two areas on the starboard side approximately at and aft of amidships.

The undersigned's Damage Survey is divided into four categories:
    A. Hull

Mr. Chiarello & Mr. Duffy
December 3, 2004
Page 3

     B. Machinery
     C. Electronics
     D. Electrical

The format for the report will be a "found and recommended" report with concluding standard recommendations and also remarks.

## HULL

**1. FOUND**-The port side of the hull was tapped below the waterline with an 8-ounce ballpeen hammer and above the waterline with a plastic chiesel pusher.
No deficiencies were noted. **PHOTO #4**.
**RECOMMENDATIONS**-None

**2. FOUND**-The starboard side of the hull was tapped below the waterline with an 8-ounce ballpeen hammer. **PHOTO #5,6.** The topsides of the
hull were tapped with a plastic chiesel pusher. The following observations were made of the starboard topsides:
    a. Below the waterline no deficiencies were noted. **PHOTO #5**
    b. An area aft of the stem was marked "D/S". This area was inspected. No deficiencies were noted. **PHOTO #7.**
    c. On the topsides at the shear approximately 14' 7" aft of the stem head it was noted a break was present in the upper PVC guard. **PHOTO #8**. The break is approximately 5" long.
    d. In the area of the topsides at the shear, 22' aft of the stem head, breaks are present in the upper and lower PVC guard. The upper guard is broken for a distance of approximately 6", the lower guard for a distance of approximately 16". **PHOTO #9.**
    e. Scratches, scrapes, and gouges are present on the starboard side of the topsides from the forward impact area to the transom.
    f. The starboard topsides were sighted. They appeared to be fair. No deficiencies were noted. **PHOTO #5.**

Note: Mr. Galgana reported that the areas (2) of the broken guard are the points of impact from the collision.
**RECOMMENDATIONS-**
    1. Remove upper and lower PVC guards between the builder's butts approximately 20'.
    2. Observe and investigate possible damages to the hull/deck joint. Repair

Mr. Chiarello & Mr. Duffy
December 3, 2004
Page 4

      as needed.
  3. The repairs to the toe rail and aluminum guard will be covered under a discussion of the wash rails. (paragraph 6 ).
  4. Renew the PVC guards in the upper and lower areas between the builders butts approximately 20'.

3. **FOUND-**The transom was tapped below the water line with an 8-ounce ballpeen hammer and above the water line with a plastic chiesel pusher. No deficiencies were noted.
**RECOMMENDATIONS-**None

4. **FOUND-**Wash rails were inspected on the port side. There was no evidence present that impact forces were transferred to the port side thereby causing damage.
**RECOMMENDATIONS-**None

5. **FOUND-**The coaming corners at the port and starboard side of the cockpit coaming, aft at the transom showed no signs of impact related crazing.
**RECOMMENDATIONS-**None.

6. **FOUND-**The starboard wash rail was inspected and tapped with a plastic chiesel pusher in the area of the forward and aft impact areas and in between. The following observations are reported:
  a. The split pipe aluminum guard is inset in the forward impact area over a distance of approximately 16" with the inset measuring approximately 3/4" deep. **PHOTOS 10 AND 11.**
  b. In the impact area #1, the molded fiberglass toe rail shows stress related crazing and is crushed over a distance of approximately 14". **PHOTO #10**
  c. No crazing or disturbance was noted in the upper surface of the wash rails in the area of impact #1 at the butt in the molded wash rail components or at the seams in the house components, where they are secured to each other and to the wash rail. **PHOTOS #11, 12 AND 13.**
  d. No disturbance was noted below the wash rail in the area of impact #1. **PHOTO #14.** This in the areas of the hull to deck joint. Nor was any disturbance noted in the tabbing system between partial bulkheads forward and aft of impact #1. **PHOTOS #15 AND 16.**
  e. No delamination of the hull or wash rail was noted except at the toe rail damage. (paragraph 6.b)

Mr. Chiarello & Mr. Duffy
December 3, 2004
Page 5

**RECOMMENDATIONS**-With the PVC guards removed, remove the split aluminum pipe at the hull to deck joint. Inspect the deck flange over the hull in the area of impact #1 and further aft in the area of impact #2. Repair the hull to deck joint (deck flange) as necessary. Replace the split aluminum pipe guard full length.

7. **FOUND**-Continuing with the wash rail inspection to the area of impact #2, the area was tapped with a plastic chiesel pusher. The following observations are reported:
   a. No delamination of wash rail or hull was noted.
   b. No crazing of wash rail or toe rail was noted. **PHOTO 17.**
   c. The support knee with integral fuel oil tank fill was damaged with fractures through the laminates at the fill cap. **PHOTOS 18 AND 19.**
   d. No fuel oil leaks were detected by sight. The area at the deck and at the area of the forward end of the fuel oil tank, visible in the bilge, revealed no fuel oil leaks that could be detected by sight, touch, or smell. Per the owner, fuel was present in the tank.

**RECOMMENDATIONS:**
   1. With the aluminum split pipe guard removed-Inspect the hull to deck joint and repair as necessary.
   2. Pump out fuel in the starboard fuel oil tank.
   3. Obtain replacement knee from boat manufacture.
   4. Remove damaged knee from hull and deck.
   5. Remove top of tank (deck) over the forward end of the tank between the forward end and the first baffled section. Temporarily seal limbers in the baffle to reduce dust contamination of the area aft.
   6. Clean and flush tank.
   7. Lay up replacement section of deck, install new knee with integral fill pipe, install new section of deck, fill, fair, and seal. Pressure test repaired tank. Color to match original as best possible.

8. **FOUND**-Port and starboard forward corner of molded dashboard at the cuddy companionway showed no crazing. **PHOTO #20.**
**RECOMMENDATIONS**-None

9. **FOUND**-Gel coat was found to be disturbed at the starboard aft outboard corner of the house extension. This in the area of the upright support. **PHOTO #21.**

Mr. Chiarello & Mr. Duffy
December 3, 2004
Page 6

This is an indication of stress from the impact area #1 and #2.
**RECOMMEND**-Reseal.

10. **FOUND**-The port aft sliding door to the house is very difficult to slide. Also the sliding panel binds on the stationary panel as the moving panel passes by the fixed panel. **PHOTOS #22 AND 23.** The owner stated he had previously modified the support of the port aft corner of the pilothouse roof extension. This area also supports the weight of the life raft. The area is now supported by an aluminum shaft. A straight edge was placed on the sliding panel and it was noted to be convex on its aft face. It is a fiberglass panel reinforced with balsa core. No strong back is present. **RECOMMEND**-Adjust the owner support of the shaft at the house roof port aft corner. The distortion of the sliding panel is considered to be fair wear and tear as the panel lacks any strong back in order to hold its original lay up shape.

11. **FOUND**-The platform was found to be marked in three areas:
    1. An inboard area between #1 and #2 impact points. **PHOTO #24.** The area was tapped extensively. The sounds, which were obtained, are considered to be due to construction method and support of the platform between the fuel oil and fresh water tanks. This is over the battery area (batteries removed). No laminate deficiencies were noted. **PHOTO #25.**
    2. In the area inboard of the port wash rail, just aft of the house, sounds were noted to change in the area of the machinery foundation due to construction methods. This area was observed through an observation port in the starboard longitudinal bulkhead. No deficiencies were noted. **PHOTO #26.**
    3. In an area mid deck on the port side, a marking was present indicating a suspicious area. This area was tapped out thoroughly and extensively and no deficiencies were noted. **PHOTO #27.**
    4. A fourth area was noted by the undersigned: In an area below the fish box there is a hole in the laminations approximately 1/16" diameter with water weeping from the hole. Dead sounds were obtained, indicating delamination and/or water saturation in the area. This is due to the lay up schedule and/or the method by which the top layer of the lay up was sealed and it is considered by the undersigned to     be non-claim related. **RECOMMENDATIONS**-None.

12. **FOUND**-The steerage was observed. No deficiencies were noted in the

lazarette or in the rudder area. **PHOTOS #28 AND #29.**
**RECOMMENDATIONS**-None.

13. **FOUND**-In the starboard aft area of the pilothouse, the aft most side window is set in rubber gaskets. A small crack is present in the lower aft corner. No disturbance is present in the area. Tabs were found to be in tact. Other windows showed no deficiencies. Butts between panels showed no deficiencies. It is felt that this
crack was preexisting to the impact. **PHOTOS #30 and #31.**
**RECOMMENDATION**-None.

14. **FOUND**-Observations of the tabbing system between longitudinal bulkheads port and starboard and the hull in the common bilge area were inspected and no deficiencies were noted.
**RECOMMENDATION**-None.

15. **FOUND**-In the area of the machinery space, all tabbing was inspected. No deficiencies were noted.
**RECOMMENDATIONS**-None.

16. **FOUND**-In the area of the cuddy, an inspection was performed of the port and starboard areas. Built-ins were inspected, as well as, the head and bench seats. It was noted that tabbing between the molded bench seats and the side of the hull showed cracking and lifting. This appears to be a production problem whereby fiberglass tabs were applied directly over unprepared gel coat on the bench surfaces. **PHOTOS #32, 33, 34.**
**RECOMMENDATIONS**-None.

17. **FOUND**-The owner complains that the Bowmar escape in the cuddy roof is leaking. It is highly improbable that the hull and fore deck flexed so as to break the bedding seal. Keep in mind that no deficiencies were noted at an inheritably weak area that being the corners of the cuddy companionway. **PHOTO #20.**
**RECOMMENDATIONS**-None.

18. **FOUND**-The owner suspects the PW Tank now leaks.
**RECOMMEND**-Pressure test PW tank and report.

Mr. Chiarello & Mr. Duffy
December 3, 2004
Page 8

## MACHINERY

**1. FOUND**-Mermaid 6-cylinder turbocharged diesel engine with 3920.19 hours of operation on the hour meter was located on its beds. This is a turbocharged 6-cylinder engine to which is attached a Twin Disc, model 506, reverse/reduction gear. **PHOTO #35,36.** The engine mounts were observed. No signs of shifting, breakage, or fractures were noted to be present. **PHOTOS #37, 38, 39, 40.**
**RECOMMENDATIONS**-None.

**2. FOUND**-The engine lube oil dipstick was pulled. A normal level of lube oil was present. No emulsification of the lube oil was noted. No burn smell was detected. The engine has sat for an extended period of time. There are no signs of lube oil leaks on the exterior. No emulsified lube oil was found to be present in the valve cover at the lube oil filler cap.
**RECOMMENDATIONS**-None at this point. A recommendation will be discussed later in this section of the report, under recommendation #5.

**3. FOUND**-The gear lube oil dipstick was pulled. The level appeared to be normal. No contamination was noted to be present. The smell was normal. Appearance was normal. No emulsified oil was present in the fill opening for the reverse gear. No leaks were detected on the exterior.
**RECOMMENDATIONS**-None at this point in the report.

**4. FOUND**-The heat exchanger tank was opened at the cap. Emulsified lube oil was found to be present inside the tank. Coolant appeared to be normal. Age of the emulsified lube oil is unknown. The oil in the heat exchanger tank might possibly come from the oil cooler or from a gasket or block failure. There is a possibility that a lube oil leak was present in the block in the area of a water passage. However, given the signs of the impact on the exterior of the hull it is highly unlikely that the interior lube oil or coolant passages within the block were disturbed, or that the block would have been cracked by the impact. .
**RECOMMEND**-See recommendation #5.

**5. FOUND**-The owner's representative reported that the engine ran rough on the way back to the harbor after the collision.
**RECOMMENDATION**-An expert diesel mechanic should be retained in order to survey the engine, and make recommendations. Change the lube oil and filter of the engine and save the oil for analysis. With owner authorization make repairs to the

Mr. Chiarello & Mr. Duffy
December 3, 2004
Page 9

engine as necessary. Document findings, test run.

6. **FOUND-**The owner's representative reported that the packless shaft seal leaked after the collision. **PHOTO #41.**
**RECOMMENDATIONS:**
    1. Check the condition of the bellows.
    2. Check the condition of the rotating disk surfaces.
    3. Check the security of the set screws holding the collars to the shaft.

7. **FOUND-**The owner is concerned about the alignment of the engine. There are no signs that the engine shifted on its mounts or beds.
**RECOMMEND-**It is standard procedure following a collision or allision that engine alignment be checked following launch.

8. **FOUND-**The owner states that oil was leaking from the area of the adapter plate and at the aft end of the reverse gear below the seal following the incident. Both areas were inspected as was possible. In both areas it was found that normal amount of dirt and slight oil accumulation was present. However, no accumulation of oil was noted to be present. There was no sign that oil leaks were present in the bilge. The owner's representative stated that he had washed the bilges following the incident.
**RECOMMENDATION-**See recommendation #5.

9. **FOUND-**During an inspection of the underwater machinery, the cutlass bearing was noted to be in normal used condition and serviceable. The wheel and the shaft (2 1/4" stainless steel) rotated easily. **PHOTO #28.**
**RECOMMENDATION-**None

10. **FOUND-**The run out of the propeller shaft is questioned by the owner's representative.
**RECOMMEND-**Remove the propeller and dial indicate the propeller shaft at the shoulder of the taper, as well as, inside the boat at the shaft seal and between the steadying bearing and the coupling. Report findings. **PHOTO #28,41.**

## ELECTRONICS

1. **FOUND-**The electronics had been removed.
**RECOMMEND-**Bench check the electronics. Diagnosis any problems that are

Mr. Chiarello & Mr. Duffy
December 3, 2004
Page 10

present, stating cause, repairs recommended and the cost of repairs.

## ELECTRICAL

1. **FOUND**-The batteries had been removed. It is understood by the undersigned that they were two each 8D 12-volt batteries. These are designed and manufactured for use in 'on and off' road construction equipment, as well as, over the road trucks and commercial boats, and also, pleasure boats. It is highly unlikely that plates and/or terminals would have been loosened by the impact given the magnitude of the impact noted on the starboard side of the boat.
**RECOMMEND**-The batteries should be stored properly and with a trickle charger attached.

## STANDARD RECOMMENDATIONS

1. Haul, set aside, and launch.
2. Check final engine alignment following launch.
3. Perform sea trials and check all systems repaired.
4. Disposal of hazardous waste is the repairers responsibility. It must be disposed of in compliance with federal, state, and local regulations.
5. Only the owner can initiate or halt work.
6. All invoices to the owner and/or the boat.
7. Any scrap value derived from replaced parts should be credited to the job.
8. The engine should be tested in place prior to removal, if necessary.
9. Per the owner, the engine was winterized for the winter of 2002/2003. It has not been winterized since. The engine should be winterized on an annual basis while in storage.
10. The fuel oil in the fuel oil tanks is old. If it was not previously stabilized it must be replace prior to returning the engine to service.

## REMARKS

The boat and engine are 9-years old and have been in service as a commercial fishing boat (lobster fisheries). During that period of time fair wear and tear will occur. I do not question the fact that there was a collision. But several factors must be considered when assessing the damages. They are:

   1. The boat is 9-years old fair wear and tear patterns will be in place and must be differentiated from damage which can be reasonably attributed to the collision as described by the owner, and as evident from the damages

Mr. Chiarello & Mr. Duffy
December 3, 2004
Page 11

     to the boat and systems.

2. The engine per the owner has had work performed on at least one cylinder causing the engine to be opened up by the repairer. The cause and nature of the failure is unknown. The work was performed during the previous owner's tenure.
3. It is recommended that the complete service record for the engine and reverse/reduction gear be obtained from the seller's service provider and from computer records, which might be maintained by the manufacturer.
4. The damage to the starboard side of the boat in the area of impact #1 and impact #2 is minimal given the evidence of the incident, and the extent of damages noted.
5. The chances of damage from the impact to the batteries is extremely remote.
6. The chance of damages to the engine and/or reverse gear, given the evidence of the impact, is extremely remote.
7. The damages to the packless shaft seal, given the evidence of the impact, is extremely remote.
8. The builder of the boat maintains a good reputation for quality of product.
9. The grid work support for the platform is extremely strong and no evidence of it being disturbed was noted.
10. Every boat builder is not necessarily the best repairer of his/her boats. Nor are they the only repairer to be considered. There are numerous highly qualified boat repairers in southeastern New England.
11. It is impossible to perform an eyeball analysis of minor water contamination of the lube oil in the absence of emulsification of the lube oil, as well as, an eye ball analysis of shaft/coupling alignment and fuel oil contamination of the coolant.
water, internal diagnosis of turbocharger failure, and bearing failures.
12. Mention was made by Mr. Scanlan that local shops would not "warranty their work". It is recommended that repairers who will warranty their work be considered for the repair operation.
13. During the repair process it is possible that previously undisclosed problems/damages will be discovered. In that case, no further work should be performed in that area, pending the notification of the owner and/or the owner's representative.

This survey sets forth the collision damages to the vessel at the time of the survey to

Mr. Chiarello & Mr. Duffy
December 3, 2004
Page 12

the best of surveyor's ability, without the removal of bulkheads, paneling, ceilings, and other portions of the propulsion machinery, or auxiliaries tanks, or fittings for internal examinations. It represents the honest unbiased opinion of the surveyor based on conditions found and is not a warranty of the condition of the vessel or its hull, machinery, or equipment.

Surveyor signs without prejudice,

*[signature]*

James T. Simonitsch
Certified Marine Surveyor

Enclosures:
1. Status report on appointment of Umpire.
2. Letter from Wiggin Marine, dated November 12, 2004.
3. Copy of Owner's Report to Massachusetts Environmental Police.
4. Photographs


JTS/ccp