UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CASE NUMBER: 04 11753 JLT

| | |
|---|---|
| ONE BEACON AMERICA INSURANCE COMPANY,<br>　　　　　Plaintiff, | )<br>)<br>)<br>) |
| v. | )<br>) |
| BLUE WATER ENTERPRISES, INC.,<br>　　　　　Defendant. | )<br>) |

### DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR AN ORDER REQUIRING THE PARTIES TO EQUALLY SHARE ANY AND ALL COSTS INCURRED BY THE UMPIRE

Now comes the Defendant, Blue Water Enterprise, Inc., in the above-entitled action by and through its undersigned attorneys, Mason & Duffy, P. C., and respectfully moves this Honorable Court for an Order denying the Plaintiff's request, which requires the Parties to equally share any and all costs incurred by the Umpire in connection with his services.

As grounds in support of this Motion, the Defendant states as follows:

### BACKGROUND

On or about August 22, 2002, the Defendant's vessel (F/V Prim Lady), while at rest, was struck by a vessel being operated on autopilot. At the time the Plaintiff insured the Defendant's vessel under hull and protection and indemnity policies. Following the collision the Defendant made an immediate claim upon the Plaintiff. The Plaintiff failed to act upon Defendant's claim for eight months. Finally, after eight months the Plaintiff appointed David Wiggins to inspect the Defendant's vessel for the purpose of

determining the nature and extent of damage sustained. Prior to the Plaintiff appointing David Wiggins, the Defendant had retained, at his own expense, a Certified Marine Surveyor, Robert Scanlon, for the purposes of determining the nature and extent of the damage sustained to the Prim Lady. In addition, at his own expense the Defendant brought the shipbuilder, Rob Barry, Four Ports Marine, Inc., to determine the nature and extent of the damage sustained to the Prim Lady. Both Mr. Scanlon and Mr. Barry determined that based upon the insured value of $122,000.00, the Prim Lady was a total loss. It should be noted, that the insurance coverage provided to the Defendant had an agreed upon value at the time of its issuance. Due to the lack of progress by the Plaintiff, the Defendant requested the appointment of an Umpire in the fall of 2003. The Plaintiff responded that as of December 3, 2003 (15 months after the date of the collision), they were not willing to proceed with an Umpire. The Plaintiff claimed, "Our surveyor has yet to conclude his drawing of the specifications, etc....." See Letter from Bernice Ford, dated December 3, 2003, attached as Exhibit 1. Ms. Ford claims the need for a "Joint Survey" in her fax; however, no such requirement exists in the contract and the language is clear, "In the extent the two surveyors cannot agree, they must select an Umpire...." This is exactly what the Defendant proposed in 2003 and Plaintiff refused.

Plaintiff's surveyor, Mr. Wiggins, did recommended a number of preliminary repairs to be performed on the vessel. Plaintiff claims that the Defendant repeatedly refused to comply with reasonable recommendations for the repairs because the Parties could not agree on the nature and extent of damage. This is not factual. The issue was that the repairs needed to be done in a professional manner, and Plaintiff had to assume responsibility for the cost of said repairs. Time continued to move along, the Plaintiff

2

had still taken no action against the vessel or its insurance carrier that struck the Defendant's vessel, and as the Plaintiff was taking no action, the Defendant was required to file suit directly against the entity which struck the Prim Lady. At no time did the Plaintiff file an interpleader or seek to take over the litigation against the party that struck the Prim Lady.

Because of the Plaintiff's failure to act on the Defendant's claim for damage to his vessel under his hull and protection and indemnity policies, it was necessary for the Defendant to file suit in Massachusetts Superior Court against the Plaintiff. On March 11, 2004, Blue Water Enterprises, Inc. sued One Beacon America Insurance Company, Plymouth Superior Court, Civil Action No. PLCV2004-00187-B. As depositions were about to commence on Bernice Ford, an employee of the Plaintiff, the Plaintiff filed an Emergency Motion to said Deposition in the Superior Court and commenced this action in the United States District Court requesting an Umpire to be appointed. See Notice of Deposition of Bernice Ford attached hereto as Exhibit 2. This action took place some two years after the initial incident. Plaintiff claims that Defendant should be responsible for all of the costs and expenses of the Umpire because Defendant delayed the process is completely unfounded. The facts clearly demonstrate the Plaintiff has done everything possible to delay the processing of the claim, all to the detriment of the Defendant. Based upon the Plaintiff's inactions and the alleged violations of its insurance policy raised by the Defendant in the Superior Court; namely, violations of M.G.L. c. 93A and 176D, the Defendant opposed the appointment of an Umpire of this matter and sought equity from this Court to remand the issue to the Superior Court for completion of the litigation filed. As this Honorable Court rendered an Order that an

3

Umpire would be appointed, the Defendant cooperated fully and the Parties agreed to have James Simonitsch appointed Umpire by this Honorable Court. On or about November 30, 2004, the Parties received an invoice from the Umpire for services rendered from November 20, 2004 through November 28, 2004 in the amount of $1,864.73. On or about April 18, 2005, the Parties received another invoice from the Umpire for services rendered from March 1, 2005 through April 16, 2005 in the amount of $1,988.16. The Plaintiff argues that the second expense was incurred by the Umpire because it was necessary for the Umpire to re-inspect the Plaintiff's vessel a second time as the Defendant's Surveyor failed to attend the initial inspection of the vessel. Again, this is factually incorrect. The second viewing of the vessel by this Honorable Court's appointed Umpire was because of specific items addressed in the Umpire's report, which the Umpire indicated did not occur from the impact of August 22, 2002. It was pointed out to the Umpire that the Defendant had a survey completed and pictures of the vessel done upon completion of Defendant's purchase. Said survey was completed on July 13, 2002, forty days prior to the collision on August 22, 2002. The July 13, 2002 survey and pictures supported the Defendant's claims that the damage the Umpire did not attribute to the collision on August 22, 2002 in fact was not present at the time of the previous survey. Despite the Defendant's frustration at the delays caused by the Plaintiff, the Defendant agreed to satisfy the Umpire's outstanding invoices, whereby the Plaintiff would pay the Umpire his entire fee immediately and upon settlement or award entered in favor of the Defendant in this action, fifty percent of the Umpire's fees incurred would be satisfied by the Plaintiff, the remaining fifty percent of the Umpire's fees would be deducted from said settlement, award or Judgment entered on behalf of the Defendant

from said proceeds. The Parties filed a Stipulation memorializing this Agreement on May 23, 2005 and was approved by the Court on May 31, 2005.

This Honorable Court entered an Order setting forth the duties and responsibilities of the Umpire with regard to bids based on the Umpire's specifications. The Parties notified the Umpire of three agreed upon shipyards for the Umpire to submit his specifications for bids. The Umpire provided his specifications to the three shipyards for bids with instructions to contact the Defendant to arrange for viewing of the vessel. None of the three shipyards selected contacted the Defendant to set up appointments to view the vessel. One shipyard never responded, the remaining two shipyards indicated to the Umpire they were not interested in submitting bids.

On or about November 10, 2005, the Parties agreed on three additional shipyards for the Umpire to request bids from based on the Umpire's specifications. It was not until this time that the Parties learned the Umpire had not contacted the first three shipyards to inquire as to their interest in submitting bids, prior to sending out his specifications for the bids to be based upon. Prior to the Umpire submitting bids to the substitute three shipyards, the Parties contacted the shipyards to in fact determine if they would be interested in reviewing the specifications and submitting bids, and the Umpire in fact forwarded the specifications for said bids. Again, all three shipyards have declined to submit bids based upon the Umpire's specifications, and a Status Conference was scheduled for March 7, 2006. Prior to the March 7, 2006 Status Conference, the Umpire wrote to both Parties indicating he had no further suggestions of shipyards from which to solicit bids. See Simonitsch letter dated January 10, 2006 attached hereto as Exhibit 3. In open Court on March 7, 2006, Counsel for the Plaintiff and the Umpire

claimed the Umpire had in fact found a shipyard which was willing to give an estimate, as opposed to a bid, with regard to the damages by the Prim Lady. Until the Umpire indicated in open Court on March 7 that he had found a shipyard willing to give an estimate as opposed to a bid, Defendant and Defendant's Counsel were unaware of this fact. It was clear from the discussion in Court, that Plaintiff's counsel was aware of these facts prior to the March 7 Hearing.

With regard to payment of the Umpire for services provided after the drawing of specifications and submissions for bids pursuant to the two referenced Orders of this Honorable Court, the Defendant respectfully submits that the Defendant has agreed to pay fifty percent of the costs as previously set forth in a Stipulation filed with this Honorable Court. It is with regard to fees and costs associated with obtaining an estimate at the sole direction of the Plaintiff, that the Defendant objects. As justification for this position the Defendant points to the insuring contract with regard to the appointment of the Umpire, and submits to this Honorable Court that the language is clear that specifications drawn by the surveyors for Plaintiff and Defendant, if they are in agreement or if they are not in agreement, specifications submitted by an Umpire (as has been done in the instant case) shall be submitted to shipyards for bids for such repairs. In the instant case the Umpire is now merely obtaining an estimate from one shipyard, said estimate not to be binding as a bid for the repairs to the vessel Prim Lady. The instant litigation was brought by the Plaintiff under a very specific provision of the insuring contract, which calls for bids to be made by several shipyards with the Plaintiff being responsible to accept only the lowest bid. If the Defendant demands a shipyard that submitted a higher bid be used, then the Defendant has to make up the difference in price

between the lower bid and any repair facility selected which has provided a bid in excess of the lowest bid. The provision of the contract relied upon by the Plaintiff for bringing this instant action does not provide for the mere obtaining of an estimate for work to be performed. As noted previously, the collision occurred in August of 2002. The Umpire was appointed by this Honorable Court and charged with his duties in 2004. We are in now in April of 2006, and not one shipyard has provided a bid under the insuring provisions of the contract in which the Plaintiff has brought the initial action. This has clearly caused irreparable harm to the Defendant with regard to having his claim properly administered. Any number of mere estimates could have been obtained from 2002 forward without the initiation of the action brought by the Plaintiff. It is for these reasons that the Defendant has raised issues with regard to the Defendant being responsible for any costs incurred by the Umpire beyond his initial charge, and merely obtaining estimates on behalf of the Plaintiff in this action. The Defendant has suffered damages due to this collision, which the insurer has refused to address, including but not limited to the loss of tackle off of the vessel, which still has not been reimbursed by the Plaintiff in this action. To require the Defendant to be responsible for one-half of the costs of an Umpire to solicit one estimate for repair of this vessel is inequitable.

 Wherefore, the Defendant Blue Water Enterprises, Inc., prays that this Honorable Court deny the Plaintiff's request for an Order requiring the Defendant to share equally in any costs incurred by the Umpire over and above the Umpire's original duties as ordered by this Honorable Court to prepare specifications and submit them to shipyards for actual bids for the repairs to be performed.

Respectfully submitted,
Blue Water Enterprises, Inc.,
By its Attorneys,

*[signature]*

Timothy F. Duffy, BBO#549742
Michael P. Mason, BBO#543987
MASON & DUFFY, P.C.
72 Sharp Street
Hingham, MA  02043
(781) 337-0066

Dated:  April 6, 2006